Ruben SOTO, Appellant,

v.

Louis C. DOEHNE, Administrator of Estate of Ernesto L. Lachica, Deceased, Appellee.

No. 16638.

Court of Appeals of Texas, San Antonio.

Nov. 18, 1981.

Oscar J. Pena, Laredo, for appellant.

Ada Cronfel, Goodman & Cronfel, Laredo, for appellee.

Before KLINGEMAN, CLARK and CANTU, JJ.

## OPINION

CLARK, Justice.

This suit arose from a written agreement between two certified public accountants concerning a transfer of accounts from one to the other. Doehne, the administrator of Lachica's estate, sued Soto to recover unpaid consideration alleged to be due for the purchase of Lachica's accounting practice. Soto contended the agreement was an employment contract whereby he had hired Lachica as a consultant, and that Lachica had already been paid more than he was entitled to receive. Trial was to the court. After admitting parol evidence as to the intent of the parties, the court found that the agreement was for the purchase and sale of Lachica's accounting practice and that Soto owed $14,500 in unpaid consideration, less a credit of $1,000. We modify and affirm the judgment.

In seven points of error Soto raises issues concerning the trial court's construction of the agreement, the admission of parol evidence, the computation of consideration due, and the asserted lack of competent evidence to support the trial court's

findings and conclusions. Soto's fourth point of error, in which he asserts that the trial court's findings of fact "are not supported by any legal, competent evidence and in fact, are in conflict with the evidence," is the equivalent of a "no evidence" point. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965). In resolving that issue, this court must consider only the evidence tending to support the findings, viewing the evidence in the most favorable light in support of the findings, giving effect to all reasonable inferences that may properly be drawn therefrom, and disregarding all contrary or conflicting evidence. *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400 (Tex.1981); *Butler v. Hanson*, 455 S.W.2d 942 (Tex.1970).

The parties signed a letter agreement [1] which was prepared by Lachica's attorney at Soto's request and in Soto's presence. At the time the agreement was prepared Lachica was not present, having already moved from Laredo to San Antonio. There was evidence that Lachica was not in good health at that time, and he died in October, 1974, a few days more than one year after the agreement was entered into.

█ The threshold question faced by the trial court was whether or not the letter agreement was so ambiguous as to justify the admission of parol evidence to establish the intent of the parties. We agree with the trial court's finding that it was. If read as an employment contract, as Soto contends it should be, the agreement fails to specify what "consulting services" Lachica was to render, or how long he was obligated to render such services in order to earn the stated consideration of "one year's gross fees" from the transferred accounts, or when and under what circumstances the accounts would be returned to Lachica. In addition, the contractual provisions as to the amount of consideration to be paid are subject to conflicting interpretations. Contrary to Soto's contention, the agreement is not complete and unambiguous on its face, and the trial court did not err in admitting parol evidence concerning the circumstances surrounding its preparation and execution, the intent of the parties, and the customs of the profession with regard to the transfer of accounting practices. *Neece v. AAA Realty Co.*, 159 Tex. 403, 322 S.W.2d 597 (1959); *Esteve Cotton Co. v. Hancock*, 539 S.W.2d 145 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.). As the court observed in *Esteve*,

> . . . examination and consideration of the entire contract leaves unresolved the true intent of the contracting parties. While the various contentions of the litigants have predicated merit, they more aptly illustrate that the contract is reasonably capable of conflicting constructions. Thus, the trial court correctly determined that the contract is ambiguous and properly admitted parol evidence bearing on the intent of the contracting parties.

539 S.W.2d at 157.

The attorney who represented Lachica in the transaction with Soto testified that she

---

1.  October 6, 1973

    Mr. Ruben Soto
    Laredo, Texas
    Dear Mr. Soto:
    I am herewith attaching to this letter list of my accounts and I will continue to render services to the clients shown on the attached list on a consulting basis for which you agree to pay me in the following manner: The sum of one year's gross fees not to exceed the amounts for the prior twelve (12) months, as indicated on list attached herewith. I will be paid monthly over a four (4) year's period, and I will render consultation services and use my best influence and endeavor in rendering services in connection with the accounts attached. Simultaneously, I am de-livering to you all files and working papers relating to such accounts, which files shall continue to be owned by me, but which you may use in connection with the rendering of services to my accounts.
    I agree not to engage in the practice of accounting during the time that you are hiring me as a consultant, in Laredo, Texas. Your acceptance to this agreement shall be evidence by your signature at the space provided below.
    Very truly yours,
    /s/
    ERNEST L. LACHICA, JR.
    ACCEPTED
    /s/
    RUBEN SOTO

first prepared a proposed agreement providing forthrightly for the purchase of Lachica's practice by Soto, but that Soto insisted that the agreement take the form of a contract for consulting services by Lachica in order that Soto might obtain the maximum income tax benefit from the transaction. Lachica's attorney then prepared the letter agreement which the parties signed, incorporating therein the provisions Soto requested. The consideration payable to Lachica under both documents was expressed in terms of "one year's gross fees," to be paid in installments over a period of four years. Lachica's attorney also testified that the covenant not to compete contained in the agreement was included "solely for the reason of getting an income benefit [sic]" for Soto.

The agreement in question fixes the transferor's consideration at "one year's gross fees not to exceed the amounts for the prior twelve months, as indicated on the list attached herewith." Lachica's gross fees for the twelve months prior to October, 1973, from all of the accounts on the list totalled slightly more than $45,000. Soto rendered services to some, but not all, of Lachica's accounts during the first twelve months after the transfer. For those services Soto collected $14,553 in fees. The administrator contends that the maximum consideration that could have accrued to Lachica under the contract was $45,000, and that the actual amount due from Soto was the sum Soto collected in that first year, $14,553. Soto argues, however, that the contractual limit on consideration should be applied on an account-by-account basis, and that the maximum consideration due from him was $7,030, the amount he contends Lachica collected in 1972–73 from those clients for whom Soto actually performed services in 1973–74. Doehne, the administrator of Lachica's estate and a certified public accountant himself, testified that he was experienced in the transfer of accounting practices, and that it was customary in the profession to fix the consideration for sale or "transfer" of a practice at one year's gross fees generated by the transferred accounts, to be paid to the seller over a

period of four to ten years. Doehne also testified that he had never seen or heard of an accounting practice transferred with an account-by-account limitation on consideration. Evidence of custom and usage in a particular business or profession is admissible to aid in determining what was intended by the contracting parties with respect to matters that are not clear and explicit in the agreement itself. *Harrell v. Zimpleman*, 66 Tex. 292, 17 S.W. 478 (1886); *Barreda v. Milmo*, 241 S.W. 743 (Tex.Civ. App.—San Antonio), *aff'd*, 252 S.W. 1038 (Texas Comm'n App. 1922, opinion adopted). The trial court found that the correct contractual measure of consideration was the amount of the gross fees collected by Soto, $14,553. We agree.

The trial court also found that the transaction between Lachica and Soto was a purchase and sale of Lachica's practice and not an employment contract, notwithstanding the form of the agreement. There is adequate evidence, properly admitted, to support the trial court's finding in that respect. *Neece v. AAA Realty Co.*, 159 Tex. 403, 322 S.W.2d 597 (1959); *Esteve Cotton Co. v. Hancock*, 539 S.W.2d 145 (Tex. Civ.App.—Amarillo 1976, writ ref'd n.r.e.). Soto appears to have dealt with the transferred accounts as his own, at least to the extent that he was able to retain them. His testimony established that although he "lost" some of the accounts, he retained some of them after the first year of the agreement; and there is no evidence that he ever offered or attempted to return any of the accounts, even though he contends the agreement was terminated by Lachica's death in October, 1974. Soto's actions are consistent with his argument that he expected to receive Lachica's assistance in handling the accounts for four years in order to "become familiar with the accounts and with the clients *so that he could thereafter handle said accounts himself.*" Appellant's brief, p. 14 (emphasis supplied). The agreement makes no provision for termination, or for the payment of any consideration to Lachica other than the first year's gross fees from the transferred accounts;

and Soto's retention of the transferred accounts after Lachica's death and his apparent intention to retain them indefinitely are significant indications that Soto himself considered the transaction a purchase and sale rather than a *bona fide* employment contract. Acts of the parties which indicate their own construction of a contract may be considered in interpreting a doubtful or ambiguous agreement. *Lone Star Gas Co. v. X-Ray Gas Co.*, 139 Tex. 546, 164 S.W.2d 504 (1942). It has been said that "[n]o principle of interpretation of contracts is more firmly established than that great, if not controlling, weight should be given by the courts to the interpretation placed upon a contract of uncertain meaning by the parties themselves." *James Stewart & Co. v. Law*, 149 Tex. 392, 233 S.W.2d 558 (1950).

We have carefully considered each of the appellant's points of error in light of the entire record before us. In every respect except one—the computation of the consideration owed to Lachica—we find that the trial court's findings are adequately supported by the evidence and that the judgment should be affirmed. Lachica was entitled to recover the amount of the first year's gross fees collected by Soto from the transferred accounts, $14,553, less the amounts paid by Soto toward that obligation. The undisputed evidence showed that Soto made payments totalling $2,850 which should have been credited against his obligation to Lachica. It appears that the trial court overlooked those credits in computing the judgment award, and instead gave Soto a $1,000 credit for the value of his time spent in servicing the transferred accounts.

It is within this court's power to modify the judgment in that respect. Tex.R.Civ.P. 435; *Pace v. Wells*, 458 S.W.2d 474 (Tex. Civ.App.—Beaumont 1970, writ ref'd n.r.e.). The trial court's judgment should have awarded the appellee $14,553, less credits of $2,850, for a net recovery of $11,703. The judgment is modified accordingly and, as modified, AFFIRMED.