02-09-303-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00303-CV

 

 


 
 
 In the Interest of K.M.J., 
 A CHild
 
 
  
 
 
  
 
 


 

 

------------

FROM THE 89th
District Court OF Wichita COUNTY

------------

MEMORANDUM
OPINION[1]

------------

I.  Introduction

          Appellant
Danny James appeals the trial court’s judgment granting Appellee Karen Lynelle
James Adair’s motion to enforce an agreed order for child support.  In his
first three issues, including eight subissues, James argues that the trial
court abused its discretion by failing to literally interpret the agreed order
and by ordering repayment of expenses for an adult child that had graduated
from high school.  In a fourth issue, James argues that the trial court abused
its discretion by enforcing an oral promise to pay child support after a child’s
high school graduation.  We will modify the trial court’s judgment and affirm the
judgment as modified.

II.  Factual Background

          James
and Adair signed an agreed order requiring James to pay Adair $550 per month in
child support for their children, R.J. and K.J.  The obligation began March 1,
2004, and continued until R.J. was eighteen years old and no longer attended
high school;[2] then James was to pay Adair $440 per month
until K.J. was eighteen and no longer attended high school.[3] 
The agreed order also required James to pay half of all medical expenses and
half of all costs associated with school activities.  In a motion to enforce,
Adair sought confirmation of all arrearages and rendition of a money judgment.  At
a hearing on her motion, the trial court entered into evidence a summary of Adair’s
testimony, itemizing the requested expenses.  At the conclusion of the hearing,
the trial court took judicial notice of the agreed order and granted Adair’s
motion, confirming the amount that she had requested.[4] 
The judgment awarded Adair $15,735.76 for “school related cost arrearages” and
$390.00 for “unreimbursed health care expense arrearages.”  This appeal
followed.

III.  Contract Construction
and Agreed Order

          In
his first three issues, James argues that the trial court abused its discretion
by interpreting the agreed order to require James to pay half of all activities
related to high school and college and ordering support of an adult child that
had graduated from high school.  James thus
argues that the trial court misconstrued the agreed order and that ordering
support for an adult child violates the Texas Family Code.[5]

          We
apply an abuse of discretion standard in reviewing a trial court’s decision to
grant or deny the relief requested in a motion for enforcement.  See Worford
v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990).  A trial court abuses its
discretion by acting arbitrarily, unreasonably, or without reference to guiding
principles.  Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992); Att’y
Gen. of Tex. v. Stevens, 84 S.W.3d 720, 722 (Tex. App.—Houston [1st Dist.]
2002, no pet.).  In rendering a final judgment for child-support arrearages,
the trial court follows a two-step process.  In re C.P., 327 S.W.3d 296,
301 (Tex. App.—El Paso 2010, no pet.).  First, the trial court, acting as a
mere scrivener, mechanically tallies the arrearage amount.  Id.  Second,
the trial court applies any statutory offsets, credits, or counterclaims before
rendering the final judgment.  Id.  An award of child support may be
modified only by the filing of a motion in the trial court.  Id.; see
Tex. Fam. Code Ann. § 156.002 (West 2008).  In confirming child-support arrearages,
the trial court’s calculations must be based on the evidence presented, not the
trial court’s assessment of a fair and reasonable result.  Chenault v. Banks,
296 S.W.3d 186, 190 (Tex. App.—Houston [14th Dist.] 2009, no pet.).  We will
uphold the trial court’s findings as long as there is some evidence of
substantive and probative character that supports its decision.  See Worford,
801 S.W.2d at 109.

          When
interpreting an agreed order for child support, we interpret the order as a
contract between the parties and apply the general rules of contract
construction.  Ex parte Jones, 163 Tex. 513, 520, 358 S.W.2d 370, 375
(1962) (“This agreed judgment must be interpreted as if it were a contract . . .
and the interpretation thereof is governed by the laws relating to contracts,
rather than laws relating to judgments.”).  Our primary concern is ascertaining
the meaning of the contract and giving effect to the true intent of the
parties.  Seagull Energy E & P, Inc. v. Eland Energy, Inc., 207
S.W.3d 342, 345 (Tex. 2006); Frost Nat’l Bank v. L & F Distribs., Ltd.,
165 S.W.3d 310, 311–12 (Tex. 2005).  To discern
this intent, we “examine and consider the entire writing in an effort to
harmonize and give effect to all the provisions of the contract so that
none will be rendered meaningless.”  Coker v. Coker, 650 S.W.2d 391, 393
(Tex. 1983) (emphasis in original).  No single provision taken alone will be
given controlling effect; rather, all of the provisions must be considered with
reference to the whole instrument.  Id.

          If
we can give the agreement a definite legal meaning or interpretation, it is not
ambiguous, and we must construe it as written.  Universal C.I.T. Credit
Corp. v. Daniel, 150 Tex. 513, 517, 243 S.W.2d 154, 157 (1951).  A contract
is not ambiguous simply because the parties disagree over its meaning.  Dynegy
Midstream Servs., L.P. v. Apache Corp., 294 S.W.3d 164, 168 (Tex. 2009).

          There
is no contention that the agreement is ambiguous, and we agree.  We will
consider the provisions’ location in the agreement, the surrounding text, and
the language used in construing the following provisions:

Child Support

 

          IT IS
ORDERED that [James] is obligated to pay and shall pay to [Adair] child support
of $550.00 per month, with the first payment being due and payable on March
1st, 2004 and a like payment being due and payable on the first day of each
month thereafter until the first month following the date of the earliest
occurrence of one of the events specified below:

 

1.    any child reaches
the age of eighteen years, provided that the periodic child support payments
shall continue to be due and paid until the end of the month in which the child
graduates from high school if the child is:

 

a.    enrolled:

 

1)       [in a program leading
toward a high school diploma];

 

2)       [in a joint program
receiving college credit and credit towards a high school diploma];




 

3)       [in a private high
school leading towards a high school diploma];

 

          . . . .

 

          Thereafter,
[James] is ORDERED to pay [Adair] child support of $440.00 per month . . .
for the second child.

 

                    . . . .

 

          It is ordered that [James] is
to pay [Adair] one-half of the cost associated with any and or all school
activities for the children, the subject of this suit, so long as [Adair] gives
to [James] 7-days notice of the amount due and for what activity.

 

          Health
Care

 

          IT IS
ORDERED that medical support shall be provided for the children as follows:

 

1.    [James’s]
Responsibility – It is the intent and purpose of this order that [James] shall,
at all times, provide medical support for the children as additional child
support.  IT IS THEREFORE ORDERED that, as additional child support,
[James] shall provide medical support for the parties’ children, for as long
as child support is payable under the terms of this order, as set out
herein.

 

                   . . . .

 

          [Each
parent] is ORDERED to pay 50 percent of all reasonable and necessary
health-care expenses not paid by insurance and incurred by or on behalf of the
children . . . for as long as child support is payable under
the terms of this order.  [Emphasis added.]

 

          The
agreement requires the payment of monthly support, support associated with
school activities, and medical expenses.  The “Child Support” section includes
both monthly support and support associated with school activities, and it
lists the circumstances under which child support terminates.  The “Health
Care” section requires payment of medical expenses, and the section states
numerous times that it requires the payment of medical costs “as long as child
support is payable.”  It is apparent that the parties intended that James’s
duty would terminate under all the provisions at the same time that his duty
for monthly support terminated.

          Both
children turned eighteen prior to high school graduation, and the parties agreed
at trial that support terminated for each child upon that child’s high-school
graduation.  The provision providing for termination requires continued support
after the child turns eighteen, but only if the child is working towards
a high school diploma.[6]  Adair contended at the
hearing that she was entitled to support associated with school activities even
if the child had concluded high school and, thus, was not working toward
a high school diploma, but the rules of contract construction set out above do
not permit such a construction of the agreement.  The agreement does not confer
a right of support associated with school activities if the child is not
working toward a high school diploma.  Additionally, as prerequisites for
reimbursement for costs associated with school activities, we construe the
agreement to require that Adair notify James of the amount of the expense and
that she notify him of what school activity the expense is associated with.  See
In re T.J.L., 97 S.W.3d 257, 267 (Tex. App.—Houston [14th Dist.] 2002,
no pet.) (holding that trial court properly denied mother’s reimbursement
request because she failed to comply with the notice provision’s time
requirement, which was a prerequisite for obtaining reimbursement from father).

          Therefore,
the unambiguous terms of the agreed order entitled Adair to a judgment for the unpaid
amount of medical expenses that she incurred for a child prior to that child’s
graduation and expenses associated with school activities if she incurred the
expense before the child graduated from high school and if she provided seven
days’ notice to James “of the amount due and for what activity.”

          A.      Expenses
Incurred Before Graduation and Associated with School Activities

 

         In
subissues one, four, and six of the first issue, James argues that the trial
court abused its discretion by ordering him to reimburse Adair for the children’s
cell phones, by ordering him to reimburse Adair for R.J.’s college registration
and orientation, and by interpreting “school activity” to include college.  We
disagree.

         Adair
requested reimbursement for half of the children’s cell phone expenses while
they attended high school.  Adair testified that she provided notice to James
of the amount due and for what activity, which was calling parents to pick them
up from school when sick and from activities after school.  James testified
that he could not afford cell phones and did not agree to pay for them.  But
the agreement does not require James’s consent; thus we overrule James’s fourth
subissue.

         Adair
also requested reimbursement for R.J.’s college registration and orientation
that he attended in April 2008 before his high school graduation.  Adair
provided notice to James of the amount due and for what activity, which was
college registration and orientation.  While these were expenses for college, they
were for school activities that Adair incurred before R.J. graduated high
school, and she provided notice as required by the agreement.  Therefore, the
record contains evidence of a substantial and probative character supporting
the trial court’s judgment ordering repayment of these expenses because Adair
complied with the prerequisite for obtaining reimbursement from James.  Accordingly,
we overrule James’s first and sixth subissues of his first issue.

         B.      Other
Expenses
Incurred Before Graduation—Some Associated with School Activities

 

         In
issue four and subissues three, seven, and eight of issue one, James argues
that the trial court abused its discretion by ordering him to pay for costs
indirectly related to school activities.  James contends that the provision requires that the expense
“relate to a specific school activity and not merely relate to attending school
in general.”  Were we to adopt James’s interpretation, we would render the
clause stating “cost associated with any and or all school activities”
meaningless.  [Emphasis added.]  Adair argued at the hearing on her
motion that the provision provides for the payment of all expenses “related” to
school and “college-related expenses.”  Were we to adopt Adair’s
interpretation, requiring James to reimburse Adair for expenses related to
school generally, we would render the notice provision meaningless because it
requires “notice of the amount due and for what activity.”  [Emphasis
added.]  Because we presume that the parties intended every clause to have some
effect and that no clause is meaningless, we reject both James’s and Adair’s
interpretation.  See Coker, 650 S.W.2d at 393.  Therefore, as explained
above, we conclude that the agreed order entitled Adair to repayment of all
expenses associated with school activities that she incurred for a child prior
to that child’s high school graduation if she provided notice of the amount and
notice of what activity.

         Adair
requested reimbursement for half of the cost of the children’s vehicles.  Adair
testified that she notified James of the amount due for both vehicles and that
the children use their vehicles to drive to school and to drive home after
their numerous school activities.  Also, Adair testified that she provided
James with notice of the amount due for gas and testified that the gas was to
drive to school and drive home after their school activities.  Adair’s notice
for the children’s vehicles and gas satisfied the notice requirement provided
by the agreement.  The evidence supports the trial court’s award for these
expenses.

         Although
Adair provided James with notice of the amount of driver’s education, vehicle
insurance, repairs, maintenance, and tags, the record does not contain any evidence
of a substantive and probative character that she provided notice of what
school activity these expenses were tied to.  Adair’s testimony merely showed
that these expenses “went along with [the] vehicle.”  Thus, the trial court
abused its discretion by ordering James to reimburse Adair for these
vehicle-related expenses totaling $3,305.47 because Adair did not comply with
the prerequisite for obtaining reimbursement from James.  Therefore, we
overrule in part and affirm in part James’s third subissue.

         James
argues that the trial court’s judgment should not include half of the cost of
school supplies and clothes. Adair’s testimony explained that most children
“get a few new clothes at the beginning of the school year.”  The record
reveals that on prior occasions Adair notified James of the cost of uniforms
and what activity the uniforms were associated with and notified James of the
cost of a calculator and that it was for an American Mathematics Competition;
James does not contest these expenses.  But here, Adair merely explained that these
clothes and supplies were “directly associated with their schooling,” which
fails to satisfy the prerequisites outlined in the agreement.  Adair testified
that the children’s school clothes cost more as they grew older and that James’s
monthly support did not cover these expenses, but her testimony appears to be a
plea for increased support rather than arguing that the expense was associated
with a school activity.  Thus, the trial court abused its discretion by
awarding Adair half the cost of school clothes and supplies totaling $900
because Adair did not comply with the prerequisite for obtaining reimbursement
from James by notifying him of the particular school activity the expenditures
were for.  Therefore, we sustain James’s fourth issue and subissues three,
seven, and eight of his first issue.

         C.      Expenses
Incurred After Graduation

         In
his second issue, James argues that the trial court abused its discretion by
enforcing an oral agreement to support an adult child after graduation.[7]
 In
his third issue and second and fifth subissues of his first issue, James argues
that the trial court abused its discretion by ordering him to pay for expenses
that Adair incurred for R.J.’s support after graduating from high school.  The
trial court’s judgment awarded Adair $1,883.00 for the following expenses that
she incurred after R.J.’s high school graduation:

         Spanish
trip/AFA trip               June 2008                  $775.00

         AFA
in-processing                  June 2008                  $500.00

         Thanksgiving
travel                Nov. 2008                  $246.25

         Christmas travel                     Dec.
2008                  $211.75

         Contacts                                Dec.
2008                  $150.00

 

         As
to Adair’s argument regarding James’s oral promise to pay expenses that she
incurred after R.J.’s graduation—the Thanksgiving and Christmas travel—the
Texas Family Code prohibits court-ordered child support once a child reaches
the age of majority and graduates high school.  See Tex. Fam. Code. Ann.
§ 154.001 (West 2008) (stating court may order payment of child support
“until the child is 18 years of age or until graduation from high school,
whichever occurs later”).  Parties may agree to continued support of a child
over eighteen, but to seek enforcement, parties to an order must have agreed
that the terms would be enforced contractually or the order must expressly
incorporate a contractual agreement.  See Tex. Fam. Code. Ann.
§ 154.124(c) (West 2008); Bruni v.
Bruni, 924 S.W.2d 366, 368 (Tex. 1996) (stating that parents’ agreement
that one provide support for children until turning twenty-one “is enforceable
as a contract only if their agreement so provides”); Elfeldt v. Elfeldt,
730 S.W.2d 657, 658 (Tex. 1987) (stating that terms “are not enforceable as
contract terms unless the agreement so provides”); Burtch v. Burtch, 972
S.W.2d 882, 886 (Tex. App.—Austin 1998, no pet.) (“Absent a contractual
agreement, there is no basis for a court to enforce child support for children
who have graduated from high school and are over the age of eighteen.”).

         Because
James has no statutory obligation to support an adult child after high-school
graduation, the trial court could not order James to pay these expenses unless he
is bound by a contract.  The agreed order does not include a written agreement
for extended child support that is enforceable as a contract.  Accordingly, we hold
that the trial court abused its discretion by ordering James to pay Adair for the
Thanksgiving and Christmas travel without any contractual or statutory basis.  See
Tex. Fam. Code Ann. § 154.124(c); Bruni, 924 S.W.2d at 368; Elfeldt,
730 S.W.2d at 658.

         In
addition to the Thanksgiving and Christmas travel, the
trial court ordered James to pay for half of the combined cost of R.J.’s high
school Spanish trip and trip to the AFA, AFA in-processing, and contact
lenses.  Regarding the Spanish and AFA trip, the Spanish trip was a high school
activity, and Adair incurred the cost before R.J. had graduated.  Adair
testified that James had failed to pay $200 of his half of the Spanish trip’s
cost and that there was an additional fuel charge of $264.  Adair listed $775
for the cost of the combined trips, but the remaining $311 was for the trip to
the AFA, which was a college expense.  The remaining expenses were for R.J.’s
support after he had graduated high school, and the agreement does not require
James to pay Adair for half of their cost.  We hold that the trial court abused
its discretion by including expenses in the judgment amount that were for R.J.’s
support after he had turned eighteen and graduated high school.  James is not required
to pay Adair for half of the AFA trip, the AFA in-processing, the Thanksgiving
and Christmas travel, or the contact lenses.  Therefore, we sustain James’
third issue and his second and fifth subissues.

IV.  Conclusion

          We hold that the trial court
abused its discretion by confirming $5,934.47 in child support arrearages. 
Accordingly, we modify the trial court’s judgment to reflect an arrearage
amount of $9,861.29 in “school related cost arrearages” and 

$240.00
for “unreimbursed health care expense arrearages.” See Tex. R. App. P. 43.2(b);
In re A.R.J., 97 S.W.3d 833, 835 (Tex. App.—Dallas 2003, no pet.). 
We affirm the trial court’s judgment as modified.

 

 

BILL MEIER
JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and MEIER, JJ.

 

DELIVERED:  July 28, 2011









[1]See Tex. R. App. P. 47.4.





[2]The record shows that R.J.
turned eighteen on December 24, 2007, and he graduated from high school in May
2008.





[3]The record shows that K.J.
turned eighteen on May 3, 2009, and graduated from high school on May 30, 2009.





[4]After selling R.J.’s
$10,000 truck for $8,000, Adair modified her request, asking James to pay half
of the remaining $2,000.  Changing this expense, the trial court confirmed the
exact amount of arrearages Adair alleged in her motion, excluding interest.





[5]Adair did not file a
brief.





[6]Because the parties
specified three types of schools that would allow for continued support after
eighteen, we construe this to mean that James must pay half of the children’s
medical expenses and half of the costs associated with their school activities,
including college-related expenses, until the child is no longer attending one of
the types of schools listed.





[7]While the trial judge did
not address the oral agreement directly, the judgment included expenses that
Adair incurred for R.J.’s support after high school graduation.